## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SLAVKO PROPERTIES, INC., *trading as* 2536-38 N. BROAD STREET ASSOCIATES, L.P, 2017 Sansom St Philadelphia, PA 19103 | Civil Action No. _____ **JURY TRIAL DEMANDED** |

SLAVKO BRKICH
1901 Walnut Street
Philadelphia, PA 19103

VICTORIA BRKICH
1901 Walnut Street
Philadelphia, PA 19103

                              Plaintiff,

v.

TD BANK, N.A.
Two Portland Square
Portland, Maine 04112

COBA PROPERTIES, INC.
Two Portland Square
Portland, Maine 04112

ECP EAST LLC
4100 Newport Place, Suite 220,
Newport Beach, Califonia

ECP RIDGE LLC
383 Inverness Parkway, Suite 390
Englewood, Colorado 80112

                              Defendants.

## COMPLAINT

Plaintiffs, SLAVKO PROPERTIES, INC., trading as 2536-38 N. BROAD STREET ASSOCIATES, L.P. ("North Broad Associates"), Slavko Brkich and Victoria Brkich (all collectively herein "Plaintiffs"), by and through their attorneys, FELLHEIMER & EICHEN LLP, make this Complaint against defendants, TD BANK, N.A., COBA PROPERTIES, INC. (collectively "TD Bank"), ECP EAST LLC ("ECP East"), and ECP RIDGE LLC ("ECP Ridge") (collectively herein "Defendants"), and in support thereof aver as follows:

## I.   <u>Introduction</u>

1.     This litigation seeks to recover the value the Defendants defrauded Plaintiffs of in connection with a series of loan transactions made to plaintiff North Broad Associates and guaranteed by plaintiffs Slavko and Victoria Brkich.

2.     As set forth in more detail below, TD Bank, the successor-in-interest of the loan by merger with the original lender, Jefferson Bank, convinced Plaintiffs to turn over title to other property then having equity in excess of $1 million to TD Bank in exchange for a principal reduction and extension on the loan, allowing them to preserve the North Broad Street Property (defined below) that was security for the loan relating to that property.

3.     After receiving this valuable consideration, TD Bank turned around and sold the loan and the judgment associated with it to defendant ECP East for the original value, pretending that the principal reduction had never taken place.

4.     At the same time, TD Bank continues to threaten Plaintiffs with the enforcement of part of the judgment that it already transferred to a third party, and therefore can no longer have any standing to enforce.

5.     TD Bank took Plaintiffs' fully rented other property and sold it for TD Bank's own benefit, and did not credit Plaintiffs in any way for the approximately $1 million in equity they received in the transaction.

~~6.     As a result of TD Bank's ongoing and continuous fraud, Plaintiffs were forced to~~ agree to pay ECP East based on that inflated price, reserving their rights to proceed against TD Bank for the difference.

7.    However, TD Bank interfered with the contract between Plaintiffs and ECP East, causing ECP East to breach its obligations to Plaintiffs and effectively preventing Plaintiffs from refinancing and retaining the North Broad Street Property.

8.    Despite making extensive, current payments to both TD Bank and ECP East, therefore, Plaintiffs have been wrongfully denied the benefit of the bargains they made and are in danger of losing their property as well.

9.    As a result, Plaintiffs have been forced to bring this suit, in which they ask the Court to establish their rights in the property and restore the value stolen from them by TD Bank, with the cooperation of ECP East.

## II.    Parties and Jursidiction

10.    Plaintiff SLAVKO PROPERTIES, INC., is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania, and the general partner of 2536-38 N. BROAD STREET ASSOCIATES, L.P., a Pennsylvania limited partnership (collectively herein "North Broad Associates").

11.    Plaintiff Slavko and Victoria Brkich are individuals residing in Philadelphia, Pennsylvania.

12.    Defendant TD BANK, N.A. is a national banking corporation under the laws of the United States with its principal place of business located at 1701 Route 70 East Cherry Hill, New Jersey.

13.    Defendant COBA PROPERTIES, INC. is, upon information and belief, a subsidiary of TD BANK, N.A. with a principal place of business of 1701 Route 70 East Cherry Hill, New Jersey. TD BANK, N.A. and COBA PROPERTIES, INC. are collectively referred to herein as "TD Bank."

14.     Defendant ECP EAST LLC ("ECP East") is a Delaware limited liability company with its principal place of business at 4100 Newport Place, Suite 220, Newport Beach, California.

15.     Defendant ECP RIDGE LLC ("ECP Ridge") is a Delaware limited liability company with its principal place of business at 383 Inverness Parkway, Suite 390, Englewood, Colorado 80112.

16.     Defendant ECP Ridge is named in this suit because of the filing of a Praecipe in the Court of Common Pleas for Philadelphia County, Pennsylvania in a case titled *TD Bank, N.A. f/k/a/ TD Banknorth, N.A. v. Brkich,* civil case no. 100402206 (the "Common Pleas Action")[1], to assign the Judgment from ECP East to ECP Ridge. As a result, on information and belief, ECP Ridge is the successor-in-interest to ECP East with respect to some or all of the rights asserted by Plaintiffs.

17.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as every plaintiff is a resident of a different state than every defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a district in which a substantial part of the events or omissions giving rise to the cause of action occurred.

## III.     Factual Background

19.     This litigation is brought to redress illegal and dishonest attempts by Defendants to trick Plaintiffs into overpaying for loans made by TD Bank to Plaintiffs.

20.     Over the course of a number of complex and interrelated transactions, TD Bank and their successors-in-interest, ECP East and ECP Ridge, improperly used the leverage afforded them by their rights as creditors to disregard payments and agreements made by Plaintiffs, and

---

[1] Pursuant to FED. R. EVID. 201, this Court may take judicial notice of the filings in the Court of Common Pleas for Philadelphia County, Pennsylvania.

this, if not redressed, will result in Plaintiffs losing their property and the value of the payments they made in an attempt to keep that property.

### A.    The 2009 Judgment

21.    Plaintiff North Broad Associates is an owner of a property located at 2532-38 North Broad Street in Philadelphia (the "North Broad Street Property").

22.    The North Broad Street Property was collateral for a loan made to North Broad Associates by Jefferson Bank (the "North Broad Street Loan"). Following a string of bank mergers, this loan was held, in 2009, by defendant TD Bank.

23.    In 2009, Plaintiffs also held a number of loans with TD Bank, including two, the "Zora Enterprises Loan" and the "Hunting Park Loan," that were cross-collateralized with the North Broad Street Loan, such that the collateral from each of the three loans secured each of the three loans.

24.    Before the entry of the judgment at issue in this case, Plaintiffs and TD Bank had agreed to the sale of the properties secured by the Zora Enterprises Loan and the Hunting Park Loan to third parties, and TD Bank released their liens against both the Zora Enterprises property and the Hunting Park property.

25.    With respect to the Hunting Park Loan, at the time of the release and sale of the collateral:

    a.    The balance due was $3,197,756.42;

    b.    $3,004,000.00 was  paid to TD Bank at closing; and

    c.    The deficiency owed by Plaintiffs under the Hunting Park loan was $193,756.42.

26.    With respect to the Zora Loan, at the time of the release and sale of the collateral:

5

    a.   Two properties were sold, one with a balance of approximately $935,000 and another with a balance of approximately $283,000;

    b.   $1,347,500 was paid to TD Bank at closing; and

    c.   The parties had agreed that the excess equity of approximately $125,000 would be applied towards other loans held by Plaintiffs at TD Bank.

27.    After the sale of the collateral for the Zora Loan and the Hunting Park Loan, the remaining deficiencies on these loans, if any, as well as the amounts due on the North Broad Street Loan, were secured only by the collateral of the North Broad Street Loan.

28.    In October 2009, defendant TD Bank filed in the United States District Court for the Eastern District of Pennsylvania, in an action titled *TD Banknorth, N.A. v. Slavko S. Brkich et al.*, case no. 2:07-cv-01353-JCJ, a consent judgment against the Plaintiffs and certain other parties, in the amount of $4,389,576.30 (the "2009 Judgment"). A copy of the 2009 Judgment is attached as **Exhibit 1.**

29.    This $4,389,576.30 was itemized by TD Bank as follows:

    a.   $3,213,397.66 due under the North Broad Consolidated Loan, including $3,152,171.41 in principal;

    b.   $195,933.99 due under the Hunting Park Loan, including $113,106.58 in principal; and

    c.   $979,519.29 due under the Zora Loan, which had in fact been paid off in full at the closing, including $916,347.03 in principal.[2]

30.    TD Bank's rights in the North Broad Street Loan, the Hunting Park Loan, and the Zora Loan merged into the 2009 Judgment.

---

[2] These amounts and the final amount of the 2009 Judgment do not match exactly, because the Court properly applied additional *per diem* interest to the requested judgment amount of $4,388,850.94.

31.    In April 2010, TD Bank transferred the 2009 Judgment to the Court of Common Pleas for Philadelphia County, Pennsylvania in a case titled *TD Bank, N.A. f/k/a/ TD Banknorth, N.A. v. Brkich,* civil case no. 100402206 (the "Common Pleas Action").

32.    In June 2010, TD Bank, N.A. assigned the 2009 Judgment to its subsidiary, defendant COBA PROPERTIES, INC., by filing a praecipe to that effect in the Common Pleas Action. *See* **Exhibit 2.**

**B.    The North Broad Street Settlement Offer**

33.    After the entry of the 2009 Judgment, Plaintiffs continued to make regular payments of interest and principal on the loans now merged into the 2009 Judgment, and TD Bank continued to advance funds under the North Broad Street loan.

34.    Between October 1, 2009, when the judgment was entered, and May 1, 2010, Plaintiffs:

      a.   Made interest payments totaling $109,157,31;

      b.   Received advances totaling $11,710.70; and

      c.   Made repayments towards principal of $16,500.

35.    In the summer of 2010, with a balance still owing on the 2009 Judgment, TD Bank scheduled the North Broad Street Property for a sheriff's sale.

36.    At that time, TD Bank considered the principal amount due on the loan securing the North Broad Street Property to be approximately $3.2 million.

37.    At that time, TD Bank had a separate loan, with a principal balance of approximately $2.2 million, on a property owned by Plaintiffs located on Chestnut Street, Philadelphia, PA (the "Chestnut Street Property").

38.     A tenant had been procured for the Chestnut Street Property, but, because of a dispute between the parties regarding the funding of improvements, the tenant could not move in and the property was not producing income.

39.     Between July and September, 2010, Plaintiffs, in an effort to prevent the sheriff's sale of the North Broad Street Property:

    a.  Paid extension fees of $50,000 to TD Bank; and

    b.  Agreed to surrender to TD Bank the Chestnut Street Property, with no equity credit applied to any loan, and thereby settle the dispute between Plaintiffs and TD Bank regarding the funding of improvements on that property.

40.     In exchange for this consideration from Plaintiffs, TD Bank agreed to delay the sheriff's sale of the North Broad Street Property until February 2011.

41.     On November 10, 2010, in an attempt to settle this matter, counsel for Plaintiffs proposed a deal to TD Bank regarding the North Broad Street Property. *See* email attached as **Exhibit 3.**

42.     The proposed deal concerned a property located at 1036 Easton Road in Willow Grove, Pennsylvania (the "Easton Road Property").

43.     At this time, TD Bank also had a separate loan in the amount of approximately $1.3 million on the Easton Road Property, which was a revenue-producing property worth approximately $2.45 million, in which Plaintiffs had an equity interest of approximately $1.15 million.

44.     The loan on the Easton Road Property was current in its interest and principal payments and had not yet matured.   There were no technical defaults.

45.    In the November 10, 2010 offer, Plaintiffs offered to convey the Easton Road property, with its equity of $1.15 million, to TD Bank in exchange for TD Bank reducing the principal balance of the North Broad Street Loan, and therefore the 2009 Judgment, to $1,500,000.

C.    **Counter-Offers and Negotiations**

46.    In a November 12, 2010 email, attached hereto as **Exhibit 4,** counsel for TD Bank accepted the "concept" of conveying the Easton Road Property to TD Bank "in exchange for a satisfaction of that loan…and a principal reduction on the North Broad property," only disagreeing with the amount of the principal reduction. **Exhibit 4.**

47.    As a counter-offer, TD Bank offered to "reduce the outstanding principal balance of the North Broad loan to $2,200,000" instead of $1.5 million as Plaintiffs had proposed. **Ex. 4.**

48.    TD Bank explained its reasoning and calculation of a reduced principal balance to $2,200,000, citing:

　　　a.    "The current loan balance for the loan secured by" the Easton Road Property as "$1,322,000";

　　　b.    "The approximate loan balance for the loan secured by the North Broad property" as "$3.2 million";

　　　c.    The loan balance on the Zora Enterprises Loan, which TD Bank asserted was "$916,000"; and

　　　d.    The loan balance on the Hunting Park Loan, which TD Bank asserted was "$114,000".[3]

**Ex. 4.**

---

[3] These values for the Zora Enterprises and Hunting Park loans are given as asserted by TD Bank. Plaintiffs dispute and do not accept these numbers as accurate.

49.     On November 17, 2010, Plaintiffs responded to TD Bank's counter-offer, suggesting a principal balance of $2,000,000. A copy of this email is attached as **Exhibit 5.**

50.     On November 18, 2010, TD Bank responded with an email giving two alternative settlement proposals. Alternative one, the alternative eventually accepted by Plaintiffs, required TD Bank to "reduce the principal balance of the North Broad loan to $2,200,000." A copy of this email is attached as **Exhibit 6**, and a copy of the reply email accepting alternative one is attached as **Exhibit 7**.

51.     It is clear from these emails that the intention of the parties was that the Easton Road Property was considered by both parties to be a valuable, income-generating property with significant equity, and that in consideration of the turnover of the Easton Road Property, the principal balance of the loans secured by the North Broad Street Property would be reduced to $2.2 million.

### D.     The Settlement Agreement

52.     On or about January 18, 2011, this settlement was reduced to a written settlement agreement (the "Settlement Agreement"), a copy of which is attached as **Exhibit 8.**

53.     Upon information and belief, the Settlement Agreement was drafted by TD Bank.

54.     The Settlement Agreement makes the delivery of a deed to the Easton Road Property a condition precedent to the settlement. **Ex. 8** at p. 2.

55.     In exchange, the Settlement Agreement states clearly that the "outstanding principal amount" of the North Broad Street Loan is "$2,210,000." **Ex. 8** § 2.01.

56.     The Settlement Agreement provides that if the outstanding principal is:

      a.  Paid in full by the maturity date of March 31, 2011, then the North Broad Street Loan will be satisfied in full; or

b. Not paid in full by the maturity date, then TD Bank may also collect "all amounts due and owing," including "accrued interest, taxes, fees" and "other costs and charges" authorized by the loan documents.

**Ex. 8** at § 2.01.

57.    At no point in the Settlement Agreement and at no point during the settlement discussions, was there any mention of any higher principal balance, or any suggestion that if the amount was not paid in full, any higher balance will be due, or the agreed-upon principal reduction, which was a condition precedent to the contract, will be undone.

58.    In fact, such an interpretation would be contrary to common sense and facially unconscionable, as it would mean that Plaintiffs would have been turning over *more than a million dollars in equity* in exchange for a meager one month extension on the North Broad Street Loan.

59.    Over the course of 2011 and 2012, Plaintiffs and TD Bank entered into a series of eleven extensions of the Settlement Agreement. Copies of the first nine extension agreements (the "TD Bank Extensions") are attached as **Exhibit 9.**

60.    Each of the TD Bank Extensions extended the maturity date of the Settlement Agreement, in exchange for the consideration of Plaintiffs' payment of:

a. $16,500 each month in interest charges; and, in addition,

b. A series of extension fees totaling at least $150,000.

61.    Over the course of the TD Bank Extensions, each extension agreement clearly stated that the outstanding principal balance was an amount between $2.1 million and $2.3 million.

62.     In January 2012, Plaintiffs requested and received from TD Bank a statement confirming that the principal then due on the North Broad Street Loan was $2,282,400. A copy of the statement is attached hereto as **Exhibit 10**.

63.     At no point between the signing of the Settlement Agreement and September 2013 did TD Bank ever make any statement to Plaintiffs indicating that, after the signing of the Settlement Agreement, it had any further right to repayment in the Zora Loan or Hunting Park Loan, or, upon information and belief, make any attempt to collect either of those two loans.

64.     In fact, as explained by TD Bank itself during the negotiation of the Settlement Agreement, in the emails attached above as **Exhibits 3-7**, the parties considered all of the loans that had merged into the 2009 Judgment to be one transaction, with the North Broad Street Property as the only security, and that all rights in all such loans merged into the Settlement Agreement. *See* **Ex. 4.**

65.     In fact, the Settlement Agreement would be nonsensical or illusory if the Zora and Hunting Park Loans were not included in the settlement transaction, because if TD Bank:

a.  Retained a separate lien on the North Broad Street Property based on the Zora and Hunting Park loans, then TD Bank could have attached the North Broad Street Property at any time, making the Settlement Agreement illusory; and

b.  Held separate liens not governed by the Settlement Agreement, then this would have blocked any attempt to refinance the North Broad Street Property, defeating the purpose of the Settlement Agreement.

12

E.      **The ECP Sale**

66.     Despite the merger of TD Bank's 2009 Judgment claim *into* the parties'

Settlement Agreement, as extended, COBA PROPERTIES, INC. nonetheless assigned the 2009

Judgment to defendant, ECP East (the "ECP East Assignment") in April 2013. A copy of the

assignment, filed publicly on the docket of the Philadelphia Court of Common Pleas, is attached

as **Exhibit 11.** The ECP East Assignment contains no reservation of rights or other limiting

language.

67.     Subsequent to the assignment of the 2009 Judgment to ECP East, Plaintiffs

entered into a Twelfth Extension to the Settlement Agreement (the "Twelfth Extension") with

assignee, ECP East, which—like the previous extensions with TD Bank—clearly recited that the

*principal balance of the loan was $2,307,000.* A copy of the Twelfth Extension is attached as

**Exhibit 12.**

68.     However, as the maturity date of the Twelfth Extension approached, ECP East

proposed a Thirteenth Extension. In the Thirteenth Extension, the amount recited as the principal

balance of the North Broad Street Loan was inexplicably increased to $3,133,261.92. A copy of

this proposed Thirteenth Extension, dated June 30, 2013, is attached as **Exhibit 13.**

69.     Despite repeated requests, including a formal discovery request filed in the

Philadelphia Court of Common Pleas, TD Bank has stubbornly and consistently refused to

divulge the ECP sale documents.

70.     However, upon information and belief, ECP East made this change because TD

Bank sold the 2009 Judgment, and the North Broad Street Loan, to ECP East under the false and

fraudulent pretense that the total principal balance due was in excess of $3.1 million, rather than

the correct value of approximately $2.1 - 2.3 million.

71.     While it may be possible that this could have been mere incompetence on the part of TD Bank, TD Bank's subsequent actions suggest that, in fact, it was intentional and malicious.

72.     When Plaintiffs *and ECP East* asked TD Bank for clarification of the principal amount due, TD Bank responded with false and/or conflicting claims, including claims that:

    a.  Plaintiffs were provided a credit for the Easton Road equity but that this was a "separate transaction" not related to North Broad Street (**Exhibit 14** at p. 2);

    b.  "[T]here was no excess" associated with Easton Road and that, in fact, TD Bank had to "waiv[e] the deficiencies" in order to satisfy the Easton Road loan (**Exhibit 14** at p. 1);

    c.  The Easton Road equity was used to reduce the amount of the 2009 Judgment, and that the reduced amount was approximately $3.1 million (**Exhibit 15**); and, finally,

    d.  The amount described as the "outstanding principal balance" in the Settlement Agreement and the TD Extensions was actually a "discounted settlement payment" amount, not the actual outstanding principal balance, which would be due if the settlement agreement was not paid in full on the maturity date (**Exhibit 16**).

73.     TD Bank also made many factual claims that are contradicted by its own emails, including claims that:

    a.  The parties "never once discussed the value of the Easton Road Property," (**Exhibit 17** at p. 2), which is clearly contradicted by **Exhibits 3 and 4**;

14

b.  Plaintiffs never proposed, and TD Bank never agreed, that any excess value should be applied to the North Broad Street Loan or any other loan (**Ex. 17** at p. 2), which is likewise contradicted by **Exhibits 3 and 4**; and

c.  The loan securing the Easton Road Property had a principal balance of more than $1.5 million (**Ex. 17** at p. 2), which is contradicted by **Exhibit 4.**

74.  Perhaps most damningly, TD Bank's claim that the Easton Road Property had no equity at the time it was turned over is directly *contradicted by the Form 1099-A provided by TD Bank* in exchange for the Easton Road Property, a copy of which is attached as **Exhibit 18.** This 1099-A states that the:

a.  Outstanding principal balance secured by the Easton Road Property was $1,305,870.55; and

b.  Fair market value of the Easton Road Property was $1,980,000.

**Ex. 18.**

75.  TD Bank has also attempted to argue that no value was provided because the actual sale price of the Easton Road Property was lower than Plaintiffs' estimate. **Ex. 17** at p. 2. Even if it is true—which it is not—this *post hoc* rationalization has no effect on the settlement agreement reached by the parties; TD Bank expressly stated that, prior to the signing of a written settlement agreement, its own agents would examine the property and review the current leases. **Ex. 4.**

76.  Despite the clear evidence to the contrary, TD Bank has consistently refused to admit that the parties had agreed to a permanent reduction in the principal balance of the North Broad Street Loan in exchange for value received.

77.     TD Bank used these false statements, together with its own business relationship with ECP East and its principals, to strong-arm ECP East into accepting its baseless version of the transaction and continuing to assert a right for the payment of a higher principal balance than ECP East, as the holder of the 2009 Judgment, was legally entitled to assert.

78.     Because of TD Bank's false and fraudulent statements, in order to avoid the total loss of the North Broad Street Property, Plaintiffs were forced to reach a settlement with ECP East based on ECP East's claimed principal balance (the "ECP Settlement", a copy of which is attached as **Exhibit 19**).

79.     As a result, Plaintiffs were damaged by TD Bank and denied the benefit of their bargain with TD Bank and the value of the Easton Road Property they provided as consideration for the Settlement Agreement.

### F.     <u>TD Bank Continues to Interfere with the ECP Settlement</u>

80.     As already stated, as part of its transaction with ECP East, TD Bank had assigned its rights in the 2009 Judgment to ECP East, without reservation.

81.     As part of the ECP Settlement, ECP East expressly represented that it had the ability to, and in fact would, "mark the Judgment satisfied," referring to the 2009 Judgment, and "release and forever discharge" Plaintiffs.

82.     In addition, the ECP Settlement reserved Plaintiffs' rights to proceed for the difference against TD Bank or any other party responsible for Plaintiffs' loss of their rights under the original Settlement Agreement.

83.     Plaintiffs relied on these representations in agreeing to the ECP Settlement.

84.     In order to allow Plaintiffs to move forward with refinancing the North Broad Street Property, Plaintiffs requested that the Judgment be marked satisfied with respect to certain of the entities listed, including entities associated with the Hunting Park and Zora Loans.

85.     Accordingly, on or about April 18, 2013, ECP East filed in the Common Pleas Action a Praecipe to Satisfy Judgment as to certain of the entities named in the judgment. A copy of this Praecipe is attached as **Exhibit 20**.

86.     At the same time, Plaintiffs attempted to recover the value of the Easton Road Property, and the bargained-for reduction in the principal balance of the North Broad Street Loan and the 2009 Judgment, from TD Bank, including Plaintiff's filing of a Writ of Summons against TD Bank in the Court of Common Pleas of Philadelphia County on September 20, 2013.

87.     In March 2014, ECP East filed a Motion in the Common Pleas Action to withdraw its earlier satisfaction of judgment, stating that the earlier satisfaction was filed "in error, not realizing that ECP's predecessors still claim an interest in the Judgment." A copy of ECP East's Brief in support of this Motion is attached as **Exhibit 21**.

88.     TD Bank supported this Praecipe, in a brief attached hereto as **Exhibit 22**.

89.     In its brief, TD Bank claims that ECP East purchased only the promissory note and loan documents for the North Broad Street loan, and that TD Bank still held rights under the 2009 Judgment. **Exh. 22** at p. 3.

90.     Although Plaintiffs have on multiple occasions requested copies of any sale agreement between TD Bank and ECP East, including by formal document requests in the Court of Common Pleas that have so far gone unanswered, TD Bank has yet to produce a copy of the sale agreement, and although its terms are discussed in the brief attached as **Exhibit 22**, it was not attached to the filing.

91.     However, what is clear from the public filings is that TD Bank in fact transferred the 2009 Judgment to ECP East "as assignee," and that all of TD Bank's rights in each of the loans represented by the 2009 Judgment had merged into that judgment by operation of law, were passed to ECP East with the Judgment, and were fully resolved by the ECP Settlement. **Exh. 20.**[4]

92.     Upon information and belief, based on statements made by representatives of TD Bank and ECP East, TD Bank tortiously interfered with the ECP Settlement and wrongfully induced ECP East to withdraw its praecipe.

93.     With the satisfaction withdrawn and the rights to and liens on the North Broad Street Property muddled, Plaintiffs were unable to refinance the North Broad Street Property and are now at risk of losing the property entirely.

94.     As a result of their inability to clear these judgment liens, Plaintiffs have been forced to surrender property valued at at least $1,000,000, and are still threatened on an ongoing basis with the loss of additional valuable property.

95.     Plaintiffs therefore ask this Court to issue declaratory judgment setting forth the rights and obligations of the parties under the 2009 Judgment, the North Broad Street Loan, the Zora Loan, the Hunting Park Loan, the Settlement Agreement, the TD Bank Extensions, the ECP Settlement, and the other agreements and transactions between the parties, and to award damages for the injuries suffered by Plaintiffs as a result of Defendants' unethical business practices.

---

[4] On or about July 29, 2014, defendant ECP East filed a Praecipe in the Common Pleas Action assigning the 2009 Judgment for the benefit of a new entity, defendant ECP Ridge LLC. *See* **Exhibit 23**. Plaintiffs are not aware at this time which, if any, rights under the ECP Settlement were assigned to ECP Ridge LLC.

## IV.  CLAIMS FOR RELIEF

### A.  FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

96.   The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

97.   There is an actual dispute between Plaintiffs, TD Bank, and the ECP defendants concerning the parties' rights and responsibilities under the 2009 Judgment, the Settlement Agreement, and the ECP Settlement.

98.   Plaintiffs have an actual and concrete interest in the determination of their rights and responsibilities in this matter being finally determined.

99.   Accordingly, Plaintiffs ask this Court to enter a judgment pursuant to 28 U.S.C. § 2201 declaring that:

    a.   All rights held by TD Bank with respect to the North Broad Street Loan, the Zora Loan, and the Hunting Park Loan merged by operation of law into the 2009 Judgment;

    b.   The Settlement Agreement reduced the principal balance of the 2009 Judgment to $2,210,000;

    c.   TD Bank's rights to the 2009 Judgment merged into the Settlement Agreement;

    d.   TD Bank transferred any and all rights to the 2009 Judgment and Settlement Agreement to ECP East, and no longer holds any interest in, or right to payment under, the North Broad Street Loan, the Zora Loan, the Hunting Park Loan, the Settlement Agreement, any of the TD Extensions, or the 2009 Judgment;

  e. Plaintiffs' entire current liability under the 2009 Judgment is the North Broad Street loan's principal balance of $2,210,000, plus any legally collectible judgment interest from the date of judgment in this case forward;

  f. Any agreement to the contrary signed by Plaintiffs, including the ECP Settlement, was obtained by fraud and is null and void.

**B.** <u>**SECOND CAUSE OF ACTION: INJUNCTIVE RELIEF**</u>

100. The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

101. Because of ECP East's refusal to cooperate in the clearing of liens under the 2009 Judgment, and because of TD Bank's unwarranted interference, Plaintiffs were denied the benefit of their bargain with ECP East: namely, the extension of the Settlement Agreement for a period of approximately one year, during which it has continued to make regular payments to ECP East.

102. Because the wrongful acts of Defendants, set forth above, clouded the title of the North Broad Street Property, it was not possible for Plaintiffs to refinance or sell the North Broad Street Property during the one-year period.

103. It would be inequitable to permit Defendants to benefit from these continued payments, which they have already received, while denying Plaintiffs the benefit of their bargain.

104. Accordingly, Plaintiffs ask that this Court enter an order:

  a. Enjoining Defendants from making any attempt to enforce any rights they might have under the 2009 Judgment, the Settlement Agreement, the TD Bank Extensions, the ECP Settlement, or any other document purporting

to give them rights deriving from the North Broad Street Loan, Zora Loan, or Hunting Park Loan, during the pendency of this litigation and for a period of not less than one year thereafter, conditioned only on the payment by Plaintiffs to ECP East of $16,500 in interest on the first day of each month; and

b. Permitting Plaintiffs to satisfy entirely all amounts due under each and all of these documents by payment of the principal balance of $2,210,000 prior to the expiration of the one-year period.

## C.   THIRD CAUSE OF ACTION: FRAUD IN THE INDUCEMENT (TD BANK)

105.   The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

106.   As set forth above, TD Bank represented to Plaintiffs during the execution of the Settlement Agreement that TD Bank would reduce the amount due under the North Broad Street Loan and the 2009 Judgment in exchange for the deed to the Easton Road Property.

107.   This representation was material to the transaction at hand and was made with the intention that Plaintiffs would rely on it.

108.   Plaintiffs did reasonbly rely on TD Bank's fraudulent representations in agreeing to the Settlement Agreement.

109.   Upon information and belief, as evidenced by TD Bank's subsequent actions and/or omissions, TD Bank in fact never intended to keep its end of the bargain, and instead intended to convert any equity in the Easton Road Property to itself.

110.   TD Bank's fraud, and Plaintiff's reasonable reliance thereon, were the actual and proximate cause of damages to Plaintiffs that include without limitation:

21

a. The loss of the negotiated and contracted-upon value of the Easton Road Property;

b. The payment of at least $150,000 in extension fees and at least $500,000 in interest payments to TD Bank, with specific amounts to be proven at trial, induced by TD Bank's concealment of its fraud;

c. Legal costs and fees involved in trying to resolve the situation created by TD Bank's fraud;

d. Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, induced by TD Bank's fraud and concealment;

e. Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper assertion of claims under the 2009 Judgment that prevented the refinancing of Plaintiffs' properties; and

f. Such other damages as may be proven at trial or awarded in the judgment of the Court.

## D.   FOURTH CAUSE OF ACTION: CONVERSION (TD BANK)

111. The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

112. As set forth above, upon information and belief, TD Bank obtained the deed to the Easton Road Property under false pretenses and converted it to TD Bank's own use.

113. TD Bank had no lawful justification for its actions.

114.    TD Bank's conversion of Plaintiff's valuable asset were the actual and proximate cause of damages to Plaintiffs that include without limitation:

    a.   The loss of the negotiated and contracted-upon value of the Easton Road Property;

    b.   The payment of at least $150,000 in extension fees and at least $500,000 in interest payments to TD Bank, with specific amounts to be proven at trial, induced by TD Bank's concealment of its conversion;

    c.   Legal costs and fees involved in trying to resolve the situation created by TD Bank's unlawful conversion;

    d.   Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, induced by TD Bank's conversion and concealment;

    e.   Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper assertion of claims under the 2009 Judgment that prevented the refinancing of Plaintiffs' properties; and

    f.   Such other damages as may be proven at trial or awarded in the judgment of the Court.

**E.**    <u>**FIFTH CAUSE OF ACTION: BREACH OF CONTRACT / ENFORCEMENT OF SETTLEMENT AGREEMENT (TD BANK)**</u>

115.    The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

116.    In the alternative, should the Court find that TD Bank's actions and/or omissions did not constitute fraud, then, as set forth above, as part of the Settlement Agreement, TD Bank agreed to reduce the principal balance of the North Broad Street Loan.

117.    Upon information and belief, TD Bank breached the Settlement Agreement as extended, including the implied duty of good faith and fair dealing, by:

      a.    Selling the North Broad Street Loan to ECP East as a loan with a balance of $3.1 million, rather than for the reduced value agreed to by the parties in the Settlement Agreement; and

      b.    After the sale, covering up and refusing to acknowledge or take responsibility for its breaches.

118.    TD Bank's actions were the actual and proximate cause of damages to Plaintiffs that include without limitation:

      a.    The loss of the negotiated and contracted-upon value of the Easton Road Property;

      b.    The payment of at least $150,000 in extension fees and at least $500,000 in interest payments to TD Bank, with specific amounts to be proven at trial, induced by TD Bank's concealment of its breach;

      c.    Legal costs and fees involved in trying to resolve the situation created by TD Bank's breach;

      d.    Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, induced by TD Bank's breach and concealment;

24

e. Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper assertion of claims under the Judgment that prevented the refinancing of Plaintiffs' properties; and

f. Such other damages as may be proven at trial or awarded in the judgment of the Court.

## F.   SIXTH CAUSE OF ACTION: THIRD PARTY FRAUD (TD BANK)

119.   The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

120.   As set forth above, upon information and belief, TD Bank misrepresented the principal balance of the North Broad Street Loan and the 2009 Judgment to ECP East, at the time the North Broad Street Loan and 2009 Judgment were sold to ECP East.

121.   This misrepresentation materially misrepresented the rights and responsibilities of Plaintiffs.

122.   At the time of the misrepresentation, TD Bank knew or should have known that it was false, or acted with reckless indifference and disregard for its truth or falsity and Plaintiffs' rights.

123.   ECP East, in relying on the misrepresentation, was acting as the successor and agent of TD Bank and TD Bank is liable for its fraud to Plaintiffs, innocent third parties, who were injured thereby.

124.   TD Bank's fraud, and Plaintiff's reasonable reliance thereon, were the actual and proximate cause of damages to Plaintiffs that include without limitation:

a. The loss of the negotiated and contracted-upon value of the Easton Road Property;

b. The payment of at least $150,000 in extension fees and at least $500,000 in interest payments to TD Bank, with specific amounts to be proven at trial, induced by TD Bank's concealment of its fraud;

c. Legal costs and fees involved in trying to resolve the situation created by TD Bank's fraud;

d. Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, induced by TD Bank's fraud and concealment;

e. Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper assertion of claims under the Judgment that prevented the refinancing of Plaintiffs' properties; and

f. Such other damages as may be proven at trial or awarded in the judgment of the Court.

## G.   SEVENTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS (TD BANK)

125. The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

126.    As set forth above, TD Bank intentionally interfered with the ECP Settlement by wrongful means and without privilege to do so, by inducing ECP East to breach the ECP Settlement.

127.    TD Bank's interference has been the actual and proximate cause of damages to Plaintiffs that include without limitation:

>   a.  Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, caused by ECP East's breach;
>
>   b.  Legal costs and fees involved in trying to resolve the situation created by ECP East's breach;
>
>   c.  Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on ECP East's breach that prevented the refinancing of Plaintiffs' properties; and
>
>   d.  Such other damages as may be proven at trial or awarded in the judgment of the Court.

**H.    EIGHTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC OPPORTUNITY (TD BANK)**

128.    The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

129.    As set forth above, TD Bank intentionally, for its own economic benefit, and without privilege to do so, interfered with the negotiation of the Thirteenth Extension of the Settlement Agreement between Plaintiffs and ECP East, and with the course of dealing between

Plaintiffs and ECP East generally, by misrepresenting the amount due and owing under the North Broad Street Loan during the sale to ECP East.

130.    TD Bank knew that misrepresenting the amount due under the loan would cause problems when the loan was renegotiated, and did so anyway, with the intention of leaving Plaintiffs without recourse.

131.    TD Bank's interference has been the actual and proximate cause of damages to Plaintiffs that include without limitation:

    a.  Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East;

    b.  Legal costs and fees involved in trying to resolve the situation created thereby;

    c.  Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper actions that prevented the refinancing of Plaintiffs' properties; and

    d.  Such other damages as may be proven at trial or awarded in the judgment of the Court.

## I.   NINTH CAUSE OF ACTION: FRAUD IN THE INDUCEMENT (ECP EAST)

132.    The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

133.    In the ECP Settlement, ECP East represented that it had the right to satisfy the 2009 Judgment and that it was willing and able to do so.

134. As demonstrated above, ECP East now claims that it does not and never has had the right to satisfy the 2009 Judgment, and therefore Plaintiffs plead, in the alternative and on information and belief, that this is and was the case.

135. If this claim is true, ECP East knew or should have known it at the time it negotiated and entered into the Settlement Agreement.

136. ECP East's right to satisfy the Judgment was clearly material to the ECP Settlement, which contemplated the sale or refinancing of the North Broad Street Property, for which a clear title, obtained by satisfaction of the 2009 Judgment, would be necessary.

137. ECP East intended for Plaintiffs to rely on this representation, and Plaintiffs did so, in agreeing to the Settlement Agreement.

138. ECP East's fraud, and Plaintiff's reasonable reliance thereon, were the actual and proximate cause of damages to Plaintiffs that include without limitation:

   a. Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, induced by ECP East's fraud;

   b. Legal costs and fees involved in trying to resolve the situation created by ECP East's fraud;

   c. Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on ECP East's actions that prevented the refinancing of Plaintiffs' properties; and

   d. Such other damages as may be proven at trial or awarded in the judgment of the Court.

**J.**   <u>**TENTH CAUSE OF ACTION: BREACH OF CONTRACT (ECP EAST)**</u>

139.   The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

140.   In the alternative, if ECP East's claim that it never had the ability to satisfy the 2009 Judgment, as set forth above, was false, then ECP East's current claim that it lacks the right to do so constitutes:

    a.   An anticipatory breach of its promise in the ECP Settlement to satisfy the 2009 Judgment; and

    b.   A current breach of ECP East's duty of good faith and fair dealing under the ECP Settlement.

141.   In that alternative, ECP East's breach has been the actual and proximate cause of damages to Plaintiffs that include without limitation:

    a.   Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East, caused by ECP East's breach;

    b.   Legal costs and fees involved in trying to resolve the situation created by ECP East's breach; and

    c.   Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on ECP East's breach that prevented the refinancing of Plaintiffs' properties; and

    d.   Such other damages as may be proven at trial or awarded in the judgment of the Court.

**K.**    **ELEVENTH CAUSE OF ACTION: ABUSE OF CIVIL PROCESS (ALL DEFENDANTS)**

142.    The previous and subsequent paragraphs are hereby incorporated as though set forth fully herein.

143.    As set forth above, even after the 2009 Judgment had been assigned to ECP East, TD Bank improperly attempted to enforce the Judgment itself to collect on obligations that had been merged into the 2009 Judgment and transferred with it.

144.    As set forth above, ECP East colluded and/or conspired with TD Bank to give color to TD Bank's claims that it had an independent right to enforce the 2009 Judgment.

145.    This affirmative misuse of the 2009 Judgment was intended for a purpose for which the judgment process was not designed, to wit: interfering with Plaintiffs' attempts to refinance the North Broad Street Property and improperly attempting to dissuade Plaintiffs from litigating to enforce their rights.

146.    This abuse of process was the actual and proximate cause of damages to Plaintiffs that include without limitation:

      a.  Delay of more than one year in the refinancing of the property, during which additional interest payments of approximately $200,000, with specific amounts to be proven at trial, were paid to ECP East;

      b.  Legal costs and fees involved in trying to resolve the situation created by the abuse of process;

      c.  Damages of at least $1,000,000, with potential future damages if the situation remains unresolved, based on TD Bank's improper assertion of claims under the Judgment that prevented the refinancing of Plaintiffs' properties; and

d.   Such other damages as may be proven at trial or awarded in the judgment of the Court.

## V.   **RELIEF REQUESTED**

**WHEREFORE,** Plaintiffs request declaratory and injunctive relief as set forth above, and additional damages in an amount not less than $1,850,000 as itemized above, jointly and severally against all defendants, plus other damages to be proven at trial and such other relief as the Court finds just and reasonable.

## VI.   **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Christopher Hapka
FELLHEIMER & EICHEN LLP
Two Liberty Place, 50 South 16th Street, 34th Floor
Philadelphia, PA 19102
(215) 253-6632
chapka@fellheimer.net
*Attorney for Plaintiffs*