**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SLAVKO PROPERTIES, INC.** *trading as* **2536-38 N. BROAD STREET ASSOCIATES, L.P.; SLAVKO BRKICH; and VICTORIA BRKICH,** | **CIVIL ACTION NO. 14-05045** |
| **Plaintiffs,** | |
| **v.** | |
| **T.D. BANK, N.A.; COBA PROPERTIES, INC.; ECP EAST LLC; and ECP RIDGE LLC,** | |
| **Defendants.** | |

**PAPPERT, J.**                                                        **APRIL 24, 2015**

**MEMORANDUM**

This dispute arises out of a series of transactions surrounding the Plaintiffs' outstanding debt of more than $3 million secured by a property located at 2532-38 N. Broad Street in Philadelphia, Pennsylvania.  TD Bank, N.A., ("TD Bank") and Coba, Inc.[1] ("Coba") move to dismiss the complaint as to all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECP East LLC and ECP Ridge LLC ("ECP Defendants") also move to dismiss the complaint as to all claims against them pursuant to Rule 12(b)(6).  The Court grants the motions.

## I.      Factual and Procedural Background

Plaintiff Slavko Properties, Inc., t/a 2536-38 North Broad Street Associates, L.P., owns a property located at 2532-38 North Broad Street ("Property") in Philadelphia, Pennsylvania. (Compl. ¶ 21, Doc. No. 1.)  TD Bank's predecessor in interest held a mortgage on the property ("N. Broad Street Loan") which was guaranteed by Plaintiffs Slavko Brkich and Victoria Brkich

---

[1] Coba, Inc. is incorrectly identified as "Coba Properties, Inc." in the complaint.

("Brkiches").  (*Id.* ¶¶ 1, 2, 22.)  In 2009, TD Bank held the N. Broad Street Loan and two other loans guaranteed by the Brkiches—the "Zora Enterprise Loan" and the "Hunting Park Loan" — that were cross-collateralized with the N. Broad Street Loan.  (*Id.* ¶ 23.)  To reconcile disputes over these three loans, Plaintiffs consented to judgment ("Judgment") in this Court on October 1, 2009 in an amount of $4,389,576.30.  (*Id.* ¶ 28, Ex. 1.)  The Judgment consolidated the following debts: $3,213,397.66 on the N. Broad Street Loan, $195,933.99 on the Hunting Park Loan, and $979,519.29 on the Zora Enterprise Loan.  (TD/Coba Mot. Dismiss Ex. A.)

In April 2010, TD Bank domesticated the Judgment in the Court of Common Pleas of Philadelphia County.  (Compl. ¶ 31.)  TD Bank then assigned the Judgment to its subsidiary, Coba, which scheduled a sheriff's sale of the Property for February 1, 2011.  (*Id.* ¶ 32, Ex. 2, Ex. 8, ¶ F.)  To forestall sale of the Property, Coba and the Plaintiffs entered into a Settlement Agreement on January 18, 2011.  (Compl. ¶ 52, Ex. 8.)  Coba agreed to postpone the sheriff's sale of the N. Broad Street Property and to cancel the sheriff's sale of the Brkiches' personal residence ("Rittenhouse Property").[2]  (*Id.* at Ex. 8, Sec. 1, 3.)  In exchange, the Plaintiffs agreed to convey a property they owned ("Easton Road Property") to Coba by executing a "deed-in-lieu of foreclosure."  (*Id.*)  Plaintiffs allege that the Easton Road Property was worth approximately $2.45 million—$1.15 million of which represented Plaintiffs' equity interest—at the time they transferred it to Coba.  (Compl. ¶ 43.)  Plaintiffs further allege that "in consideration of the turnover of the Easton Road Property, the principal balance of the loans secured by the North Broad Street Property would be reduced to $2.2 million."  (*Id.* ¶¶ 51, 55.)  Plaintiffs' claims are

---

[2] Plaintiffs fail to allege that after the conveyance, Coba permanently cancelled the sheriff's sale of the Rittenhouse Property.  At oral argument, Plaintiffs' counsel did not dispute the Court's conclusion that TD Bank and Coba permanently cancelled the sheriff's sale.  (*See, e.g.*, Hr'g Tr. 71.)  The Judgment Lien on the Rittenhouse Property was released on April 17, 2013.  *See T.D. Bank, N.A. v. Brkich*, No. 100402206, Civ. Dkt., *available at* http://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames (last visited Apr. 24, 2015).

predicated on their assertion that TD Bank and Coba agreed to this dollar-for-dollar permanent reduction of the amount due under the Judgment.

Plaintiffs conveyed the Easton Road Property to TD Bank and Coba. (Compl. ¶ 2.) Between 2011 and 2013, Plaintiffs, TD Bank and Coba entered into eleven extensions of the Settlement Agreement. (*Id.* ¶ 59.) In each extension, TD Bank and Coba agreed to further postpone the sheriff's sale of the Property until a date certain in exchange for (1) Plaintiffs' agreement to tender extension payments to Coba during the period of its forbearance and (2) Plaintiffs' agreement to pay a specified sum[3] by that date certain in satisfaction of the debt. (*See* Compl. Ex. 9.) If Plaintiffs failed to pay the enumerated amount by the date certain, then Coba was entitled to collect all amounts due and enforce all mortgages and liens on the Property by reinitiating the sheriff's sale. (*See id.*) The Eleventh Extension postponed the sheriff's sale of the Property until April 30, 2013 and provided that the Plaintiffs could satisfy their debt by paying $2,307,000.00 by that date. (Eleventh Extension, TD/Coba Mot. Dismiss Ex. B.) Plaintiffs never tendered this payment. (*See* Compl. Ex. 15, 16.) Indeed, in the years since the parties first entered the Settlement Agreement, Plaintiffs have never paid any amount toward the principal balance. (Hr'g Tr. 6, 79.)

In April 2013, Coba assigned the Judgment to ECP East. (Compl. ¶ 66, Ex. 11.) After the assignment, Plaintiffs entered into a twelfth extension with ECP East. (Compl. ¶ 67.) As the maturity date of the twelfth extension approached, the parties discussed a thirteenth extension. (*Id.* ¶ 68.) During these discussions, Plaintiffs contend that ECP East "inexplicably increased" the amount described as the principal balance of the N. Broad Street Loan to $3,133,261.92. (*Id.*) Plaintiffs allege that this increase was demanded "because TD Bank sold the 2009 Judgment, and the North Broad Street Loan, to ECP East under the false and fraudulent pretense

---

[3] The amount of the specified sum increased as TD Bank and Coba agreed to additional extensions.

that the total principal balance due was in excess of $3.1 million, rather than the correct value of approximately $2.1-2.3 million." (*Id.* ¶ 70.) Plaintiffs contested the $3.1 million balance and ECP East asked TD Bank and Coba for an explanation. (Compl. Ex. 15, 16.) TD Bank and Coba explained that "[e]ach of the settlement agreements presented the [Plaintiffs] with an opportunity to obtain a discounted payoff if the [Plaintiffs] made the 'Settlement Payment' on or before a specified date. The same paragraph of each settlement agreement expressly preserved the right for COBA and TD to pursue all outstanding/unpaid amounts in the event that the [Plaintiffs] defaulted or failed to take advantage of the discounted payoff offer." (Compl. Ex. 15, 16.) Thus, TD Bank and Coba explained that "the outstanding balance of the loan on the books and records of COBA was as represented in the Loan Sale Agreement." (*Id.*)

Plaintiffs allege that this explanation was "false and fraudulent" but, in order to avoid the total loss of the Property, they "were forced to reach a settlement with ECP East based on ECP East's claimed principal balance." (Compl. ¶ 78.) As a part of this settlement ("ECP Settlement"), ECP East represented that it would "upon full and timely payment. . . mark the Judgment 'satisfied.'" (ECP Settlement Sec. 7.1, Compl. Ex. 19.)

Plaintiffs asked ECP East to mark the Judgment satisfied with respect to the Zora Enterprise Loan and the Hunting Park Loan to aid their attempts to refinance the Property. (Compl. ¶ 84.) ECP East agreed and filed a praecipe to satisfy judgment as to those entities on April 18, 2013. (Compl. ¶ 85, Ex. 20.) Plaintiffs then filed a praecipe for writ of summons against TD Bank in an effort to "recover the value of the Easton Road Property, and the bargained-for reduction in the principal balance of the N. Broad Street Loan and the 2009 Judgment."[4] (Compl. ¶ 86.)

---

[4] Plaintiffs subsequently withdrew this writ of summons. (Hr'g Tr. 17.)

In March 2014, ECP East filed a motion to withdraw its earlier praecipe to satisfy judgment because the satisfaction was filed in error.  (Compl. ¶ 87.)  According to its papers filed with the Court of Common Pleas, ECP East had been unaware that TD Bank and Coba still claimed an interest in the Judgment.  (Compl. Ex. 21.)  TD Bank filed a brief in support of this motion.  (*Id.* ¶ 88.)  In its brief, TD Bank explained that ECP East purchased only the promissory note and loan documents for the N. Broad Street Loan, not the entire Judgment.  (Compl. ¶ 89, Ex. 22.)  Plaintiffs opposed the withdrawal and asserted that TD Bank could not retain an interest in the Judgment because it had been assigned in its entirety and without reservation to ECP East. (TD/Coba Mot. Dismiss Ex. D.)

The Court of Common Pleas granted ECP East's motion thereby allowing ECP East to withdraw the partial satisfaction of the Judgment.  (*Id.* at Ex. E.)  Plaintiffs were apparently unable to refinance the Property after the withdrawal of the partial satisfaction and "are now at risk of losing the property entirely."  (Compl. ¶ 93.)  On July 28, 2014, ECP East assigned the Judgment to ECP Ridge.  (*Id*. at Ex. 23.)

On August 29, 2014, two days before Plaintiffs' payment of $2,800,000 was due under the ECP Settlement, (*see* ECP Settlement Sec. 2.1.), they initiated this action by filing an eleven count complaint against TD Bank, Coba and the ECP Defendants.  (*See* Compl.)  The Plaintiffs ask the Court to ascertain the rights and obligations of the parties under the Judgment, the underlying loans, and the various agreements between the parties and declare that the Plaintiffs owe only $2,210,000 based solely on their contention that they received a dollar for dollar permanent reduction of the principal balance of their debt.  Plaintiffs also ask the Court to enjoin the defendants from enforcing the Judgment and grant Plaintiffs another year to pay the $2,210,000 balance owed.  Finally, they seek an award of damages based on the defendants'

alleged conduct.  With regard to the Settlement Agreement and its subsequent extensions with

TD Bank and Coba and against those parties, Plaintiffs allege fraud in the inducement,

conversion, breach of contract, third party fraud, tortious interference with existing contractual

relations, tortious interference with prospective economic opportunity, and abuse of civil

process.  With regard to the ECP Settlement and against the ECP Defendants, Plaintiffs allege

fraud in the inducement, anticipatory breach of contract, and abuse of civil process.

This case was initially assigned to the Honorable Nitza I. Quiñones Alejandro.  Plaintiffs

moved for a Preliminary Injunction on September 17, 2014 asking Judge Quiñones Alejandro to

enjoin TD Bank from enforcing the Judgment in the Court of Common Pleas and to enjoin ECP

East from enforcing the ECP Settlement.  (Doc. No. 4.)  Judge Quiñones Alejandro denied

Plaintiffs' motion on October 7, 2014.  (Doc. No. 12.)  Plaintiffs then filed a motion for

reconsideration of the denial of their request for a preliminary injunction.  (Doc. No. 13.)  Judge

Quiñones Alejandro also denied that motion.  (Doc. No. 35.)  Plaintiffs, through their affiliate

Mellon Green Realty Group, Inc., sought identical relief from the Honorable J. Curtis Joyner,

who presided over the initial foreclosure action that concluded with the entry of the Judgment, by

filing a post-judgment motion to enforce, or in the alternative strike, the assignment of the

Judgment to ECP East.  (*See T.D. BankNorth, N.A. v. Brkich*, No. 07-cv-01353, Defs' Mot., Doc.

No. 28).  Judge Joyner denied the motion because it was "entirely duplicative of the requests"

pending in this matter.  (Doc. No. 36.)

Plaintiffs also filed an Emergency Motion to Stay the Marshall [sic] Sale of the Property

scheduled for January 9, 2015.  (Doc. No. 28.)  On December 23, 2014, Judge Quiñones

Alejandro granted the motion and stayed the sale for 90 days. (Doc. No. 32.)

This case was reassigned from Judge Quiñones Alejandro to this Court on January 29, 2015.  (Doc. No. 36.)  Plaintiffs filed an Emergency Motion for Extension of the Stay on March 18, 2015.  (Doc. No. 39.)  After realizing that a sale has not been scheduled, the Plaintiffs moved to withdraw their Emergency Motion.  (Doc. Nos. 42, 43.)  The Court granted Plaintiffs leave to withdraw the Emergency Motion on March 24, 2015.  (Doc. No. 44.)

In the midst of Plaintiffs' numerous filings, TD Bank and Coba moved to dismiss Plaintiffs' claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. No. 11.)  The ECP Defendants likewise moved to dismiss the claims against them pursuant to Rule 12(b)(6).  (Doc. No. 25.)  Oral argument on the defendants' motions was held on April 1, 2015.

## II.    Discussion

## Motion to Dismiss for Lack of Subject Matter Jurisdiction

TD Bank and Coba move to dismiss Plaintiffs' claims for declaratory judgment, injunctive relief and abuse of process pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the Court lacks jurisdiction over these claims pursuant to the *Rooker-Feldman* Doctrine.

A motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) challenges the Court's power to hear the case.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  A 12(b)(1) challenge may present either a facial attack or a factual attack on the Court's jurisdiction.  *Id*.  When presented with a facial attack, the Court "must consider the allegations of the complaint as true."  *Id*.  In the case of a factual attack, however, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction."  *Gould Elecs., Inc. v. U.S.*, 220 F.2d 169, 178 (3d Cir. 2000).  Because this jurisdictional challenge asks

the Court to look beyond the allegations in the complaint, it will be treated as a factual challenge. *See, e.g.*, *Walthour v. Child & Youth Serv.*, 728 F. Supp. 2d 628, 635 (E.D. Pa. 2010) (concluding that "[defendants'] arguments relying upon the *Rooker–Feldman* doctrine demonstrate their intent to make a factual challenge to subject-matter jurisdiction"); *Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys. Inc.*, No. 14-cv-05995, 2015 WL 687801, at *4 (E.D. Pa. Feb. 17, 2015) (same).

The *Rooker-Feldman* Doctrine is a narrow doctrine that divests district courts of subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* Doctrine applies only if the following four elements are met: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgment; (3) the judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the judgment. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citation omitted). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.* Neither the second nor the fourth requirement is satisfied here.

The source of the injury targeted by Plaintiffs' claims is not the state court judgment. *Great W. Mining*, 615 F.3d at 166 ("The second requirement . . . may also be thought of as an inquiry into the source of the plaintiff's injury.") Plaintiffs seek relief based on (1) TD Bank and Coba's conduct pursuant to the Settlement Agreement and its extensions; (2) the validity of the assignment of the Judgment to ECP East; and (3) TD Bank and Coba's procurement of the state

court order granting ECP East's request to withdraw its praecipe to satisfy judgment. The *Rooker-Feldman* Doctrine is not a bar to federal jurisdiction when "a federal plaintiff asserts injury caused by the defendants' actions and not by the state-court judgment." *Great W. Mining*, 615 F.3d at 167 (citations omitted); *see also Johnson v. Draeger Safety Diagnostics, Inc.*, 594 F. App'x 760, 764 (3d Cir. 2014) ("[W]hen the source . . . is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court.").

TD Bank and Coba's reliance on a litany of cases in which the *Rooker Feldman* Doctrine deprived the District Courts of subject matter jurisdiction over attempts to invalidate final state court foreclosure judgments is inapposite. In *Willoughby v. Zuker, Goldberg, & Ackerman, LLC*, the case TD Bank and Coba principally rely upon, the plaintiff raised a number of issues that the state court had already considered and ruled upon when issuing a final foreclosure judgment. *Willoughby v. Zuker, Goldberg, & Ackerman, LLC*, No.13-cv-7062, 2014 WL 2711177, at * 4 (D.N.J. June 16, 2014). Unlike *Willoughby*, there is no evidence that the Court of Common Pleas ruled upon the issues Plaintiffs now raise and, thus, Plaintiffs are not complaining of an injury caused by the state court decision.

TD Bank and Coba contend that Plaintiffs' claims require the Court to reject the Court of Common Pleas' factual findings and "indirectly overrule an adverse prior judgment." (TD/Coba Mot. Dismiss 9-10.) The *Rooker Feldman* Doctrine is not implicated solely because Plaintiffs dispute facts that TD Bank and Coba submit were necessary to the state court's order. *See Johnson*, 594 F. App'x at 765 n.2 ("The federal outcome can permissibly undermine a conclusion or rationale of the state judgment without implicating *Rooker-Feldman*.") (citing *Great W. Mining*, 615 F.3d at 173). Rather, the focal point must be the state court's holding,

which, in this case, is limited to the granting of ECP East's request to withdraw the partial

satisfaction.  *See FOCUS v. Allegheny Cnty. Ct. Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)

("[T]o determine whether *Rooker-Feldman* bars [plaintiffs'] federal suit requires determining

exactly what the state court held.  If the relief requested in the federal action requires

determining that the state court decision is wrong or would void the state court's ruling, then . . .

the district court has no subject matter jurisdiction to hear the suit.").  In Pennsylvania, "[a] court

may properly strike the entry of satisfaction of judgment where the satisfaction is obtained by

fraud or mistake."  *Neustein v. Ins. Placement Facility of Pa.*, 412 A.2d 608, 609 (Pa. Super. Ct.

1979).  The Court of Common Pleas concluded that ECP East met this burden and allowed the

withdrawal of the partial satisfaction.  (TD/Coba Mot. Dismiss Ex. E.)  Plaintiffs do not attack

the entry of this order and they do not ask the Court to review "the proceedings already

conducted by the 'lower' tribunal to determine whether it reached its result in accordance with

the law."  *Great W. Mining*, 615 F.3d at 169.

Plaintiffs' claims for declaratory and injunctive relief as well as abuse of process present

"independent, non-barred claim[s]."  *Great W. Mining*, 615 F.3d at 166.  TD Bank and Coba's

motion to dismiss for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman*

Doctrine is denied.[5]

---

[5] TD Bank and Coba also argue that the Court should abstain from exercising jurisdiction over Plaintiffs' claims pursuant to the *Colorado River* Abstention Doctrine.  (TD/Coba Mot. Dismiss 13-14.)  The threshold question in the *Colorado River* Abstention analysis is whether there is a parallel state proceeding that raises "substantially identical claims and nearly identical allegations and issues."  *Nationwide Mut. Fire. Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)).  Here, the claims alleged against the defendants are wholly distinct from the enforcement action pending before the Court of Common Pleas.  The lawsuits are not parallel, and the Court accordingly cannot abstain.  *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003) ("If the proceedings are not parallel, abstention is inappropriate.").

**Motion to Dismiss For Failure to State a Claim**

All defendants move to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the factual allegations in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In evaluating a motion to dismiss the Court must "construe the complaint in the light most favorable to the plaintiff." *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).  Courts accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court need not, however, take as true "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  *Warren Gen. Hosp.*, 643 F.3d at 84 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).  "[A] complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Fowler*, 578 F.3d at 210-11 (citation omitted).  A motion to dismiss will be granted if the factual allegations in the complaint are insufficient "to raise the right of relief above the speculative level."  *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Schmidt v.*

*Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).  In addition, "[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 988 F.2d 1192, 1196 (3d Cir. 1993); *see also In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, (3d Cir. 1997) ("A document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").  Finally, "where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) (citation omitted).

<u>Breach of Contract Against TD Bank and Coba</u>

The Court must first determine what documents express the entire agreement among Plaintiffs, TD Bank and Coba.  *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354 (Pa. Super. Ct. 2002) ("[I]t is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument. . . .") (citation omitted).  The Plaintiffs appear to base their claims on the "Settlement Agreement, as extended."  (Compl. ¶¶ 52-65, 117.)  They attached the Settlement Agreement and the First through Seventh and Ninth Extension Agreements to their complaint.  Plaintiffs' arguments in response to TD Bank and Coba's motion to dismiss, however, focus on the Settlement Agreement, (Pls' Opp'n TD/Coba Mot. Dismiss 3-6), and the relief Plaintiffs seek is formulated solely around the language of the Settlement Agreement.  TD Bank and Coba assert that the Eleventh Extension, which they attached to their motion to dismiss, is the operative document.  (TD/Coba Mot. Dismiss 10 n.7.)

"Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 187 (Pa. Super. Ct. 2013) (citing *Huegel*, 796 A.2d at 354-55); *see also Stanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). The Settlement Agreement describes TD Bank and Coba's initial agreement to postpone the sheriff's sale of the Property and cancel the sheriff's sale of the Rittenhouse Property in exchange for the deed to the Easton Road Property. (Settlement Agreement Secs. 1, 3.) The Eleventh Extension embodies the most recent agreement between the parties with regard to the postponement of the sheriff's sale of the Property. It refers to the terms "of a certain settlement agreement and extensions related thereto" and recognizes that Coba previously "postponed the Sheriff's Sale of the N. Broad Property until March 5, 2013." (Eleventh Extension ¶ F.) This recitation is included in the Background section and is incorporated into the agreement. This language shows that the Eleventh Extension, like the preceding ten, was made as "part of one transaction"–*i.e.*, the delay of the sheriff's sale of the Property–that was initiated by the Settlement Agreement. The Eleventh Extension, however, supersedes the prior ten extension agreements and the specific section of the Settlement Agreement that initially postponed the sheriff's sale.[6] Thus the Settlement Agreement and the Eleventh Extension (collectively "Settlement Agreement as extended") must be read together to capture the terms of the entire agreement among the Plaintiffs, TD Bank and Coba. *See Huegel*, 796 A.2d at 356-57 ("After reading the contracts together and in reference to one another, we hold that the integration clause combined with the numerous references in the third contract to

---

[6] "This Extension Agreement supersedes all prior negotiations and understandings with respect to the subject matter hereof. . . ." (Eleventh Extension Sec. 6.03.)

the second contract effectively incorporated the second contract into the third contract to the extent the second contract does not conflict with any of the provisions within the third contract" despite the presence of an "unambiguous clause stating that [the third contract] is the entire agreement"); *see also Allegheny Enters., Inc. v. J-W Operating Co.*, No. 10-cv-02539, 2014 WL 866478, at *5 (M.D. Pa. March 5, 2014) ("[T]he Exploration Agreement, Assignment, and Termination Agreement should be construed with reference to each other.  The Assignment and Termination Agreement both refer back to the Exploration Agreement, and the three agreements all purport to govern the parties' relationship as to their mutual interests. . . . The only reasonable inference is that the parties contemplated the interaction of the agreements.").

Settlement agreements are interpreted in accordance with the well-settled principles of contract interpretation.  *See, e.g.*, *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prod. Liab. Litig.*, 706 F.3d 217, 223 (3d Cir. 2013).  When interpreting a contract, a court must first consider the intent of the parties as expressed by the words used in the agreement.  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 452 (3d Cir. 2006) (citing *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 232-33 (3d Cir. 2001)).  When the writing is clear and unambiguous, the express terms of the contract control.  *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 92-93 (3d Cir. 2001).  Determining the intent of the parties under such circumstances is a question of law.  *Seven Springs Farm, Inc. v. Croker*, 801 A.2d 1212, 1215 n.1 (Pa. 1982).

A contract is ambiguous "if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning."  *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002) (quoting *Duquesne Light Co. v.*

*Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995)).  The parties' disagreement as to the

proper construction of the contract does not render a contract ambiguous.  *Pacific Emp'rs Ins.*

*Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 426 (3d Cir. 2012).

"[T]he ultimate goal [of contract interpretation] is to ascertain and give effect to the intent

of the parties as reasonably manifested by the language of their written agreement."  *Sw. Energy*

*Prod. Co.*, 83 A.3d at 187 (quoting *Humberston v. Chevron U.S.A., Inc.*, 75 A.3d 504, 509-10

(Pa. Super. Ct. 2013)).  When ascertaining the parties' intent, the court must avoid ascribing an

interpretation that conflicts with the plain meaning of the language used by the parties or

otherwise alters the clear import of the contract.  *Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798

(Pa. 1984).  Similarly, all provisions must be construed together and each given effect because

"the Court will not interpret one provision of a contract in a manner which results in another

portion being annulled."  *Lesko v. Frankford Hosp.-Bucks Cnty.*, 15 A.3d 337, 342 (Pa. 2011).

Both parties agree that the language of their agreement is unambiguous.[7]  (*See, e.g.*,

TD/Coba Mot. Dismiss 18; Pls' Opp'n TD/Coba Mot. Dismiss 3-6; TD/Coba Reply 1-2.)  They

nevertheless disagree as to the "unambiguous" language's meaning.  TD Bank and Coba

maintain that the Settlement Agreement as extended reflects their willingness to accept a reduced

amount in satisfaction of the Plaintiffs' debt by a date certain.  (TD/Coba Reply 3.)  Plaintiffs

assert that they delivered the deed to the Easton Road Property to Coba in exchange for a

permanent reduction of the amount due under the Judgment to $2.2 million.  (Compl. ¶¶ 43-44,

51, 52-56, 106, 116-17, 120, 129.)

The Court begins by examining the pertinent language in the Settlement Agreement to

determine the foundation of the parties' agreement.  The relevant provisions of the Settlement

Agreement include:

---

[7] At oral argument, the parties confirmed their positions that the language is unambiguous.  (Hr'g Tr. 18-19.)

**Section 1.**      **Conditions Precedent**

The effectiveness of this Agreement and TD's and Coba, Inc.'s willingness to **cancel the Sheriff's Sale of the Rittenhouse Property and postpone the Sheriff's Sale pursuant to the terms of this Agreement** are subject to the following conditions:

1.02      **Execution of a Deed-in-Lieu of Foreclosure**

On or before the execution of this Agreement, 1036 Easton shall have executed and delivered to counsel for Coba, Inc. a deed-in-lieu of foreclosure (the "Deed-in-Lieu") to convey the Easton Road Property to Coba, Inc., its successors or assigns.  The Deed-in-Lieu shall be in a form acceptable to Coba, Inc. and its counsel and may be recorded upon receipt by counsel for Coba, Inc.

**Section 2.**      **Additional Consideration from Borrowers**

2.01      On or before March 31, 2011, N. Broad agrees to repay to Coba, Inc. the outstanding principal amount of $2,210,000.00 in full satisfaction of all mortgages and liens that TD and Coba, Inc. have on the N. Broad Property and agrees that such amount is due and owing to Coba, Inc. without any offset, claim, counterclaim or defense.  **If N. Broad does not repay to Coba, Inc. $2,210,000.00 on or before March 31, 2011, Coba, Inc. shall be entitled to seek to collect all amounts due and owing from N. Broad and enforce all mortgages and liens on the N. Broad Property, including, without limitation, accrued interest, taxes, fees (including legal fees) and other costs and charges authorized under the applicable loan documents**;

**Section 3.**      **Consideration from TD and Coba, Inc.**

3.01      Upon satisfaction of all conditions precedent set forth in Section 1 of this Agreement, Coba, Inc. and TD (as applicable) **shall satisfy all mortgages and release all judgment liens that they hold on the Rittenhouse Property**;

3.02      Provided that no "Event of Default" (hereinafter defined) has occurred and all conditions precedent set forth in Section 1 of this Agreement have been satisfied, **Coba, Inc. shall forbear from exercising its rights and remedies against N. Broad, the Brkiches and the N. Broad Property until the**

> **earlier of: (a) the occurrence of an Event of Default under this Agreement by the Borrowers or the Affiliates or (b) March 31, 2011**; and
>
> 3.03    Promptly after the Borrowers' satisfaction of all conditions precedent set forth in Section 1 of the Agreement, Coba, Inc. and the Borrowers shall file a joint emergency motion to **postpone the Sheriff's Sale of the N. Broad Property to the first regularly scheduled sale date in April 2011 and shall cancel the Sheriff's Sale of the Rittenhouse Property**.

Settlement Agreement Sec. 1-3 (emphasis added).

The language is clear and unambiguous.  TD Bank and Coba agreed to **cancel** the sheriff's sale of the Brkiches' personal residence in Rittenhouse Square and to **postpone** the sheriff's sale of the Property until March 31, 2011 in exchange for the "Deed-in-Lieu" to the Easton Road Property.  The language of Section 2 provides that as "additional consideration" the Plaintiffs could avoid the sheriff's sale of the Property if they paid $2,210,000 on or before March 31, 2011.  If Plaintiffs failed to pay $2,210,000 by that date, then Coba was entitled to collect all amounts due and owing and enforce all mortgages and liens on the Property through the sheriff's sale that was to be rescheduled in April 2011.

Plaintiffs' contention that the exchange of the Easton Road Property was intended as a dollar-for-dollar permanent reduction of the amount due under the N. Broad Street Loan distorts the agreement's structure.  Section 1 describes the Plaintiffs' obligation to convey the "Deed-in-Lieu" to Coba and Section 3 lays out TD Bank and Coba's obligations upon receipt of the deed: to satisfy all mortgages and release all liens on the Rittenhouse Property, to cancel the sheriff's sale of the Rittenhouse Property, and to postpone the sheriff's sale of the Property.  Section 2 provides Plaintiffs with a completely different opportunity: the ability to cancel the sheriff's sale of the Property by paying a reduced amount on or before March 31, 2011.  The conveyance of the Easton Road Property is neither expressly nor implicitly referenced in this section and thus

17

has no part in that exchange.  *Mellon Bank, N.A.v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009

(3d Cir. 1980) ("A court will make no inference or give any construction to the terms of a written

contract that may be in conflict with the clearly expressed language of the written agreement.")

(quoting *Nat'l Cash Register Co. v. Modern Transfer Co.*, 302 A.2d 486, 488 (Pa. Super. Ct.

1973)).

Plaintiffs argue, in support of their interpretation, that the Settlement Agreement

"provided for a no [sic] other consideration for this brief 72 day extension than the principal

reduction to be effectuated through the property transfer condition precedent."  (Pls' Opp'n

TD/Coba Mot. Dismiss 8).  Plaintiffs disregard Coba's willingness to forgive more than $1

million of the Plaintiffs' debt if they paid by March 31, 2011 and they ignore TD Bank and

Coba's obligation to satisfy all mortgages and release all judgment liens on the Rittenhouse

Property and to cancel the sheriff's sale.[8]  The Court need not "consider seriously a complaint or

argument which seeks to mischaracterize an agreement. . . ."  *Mellon Bank, N.A.*, 619 F.2d at

1012 n.13.

The Eleventh Extension, by further postponing the sheriff's sale of the Property until

April 30, 2013, supersedes the language in Section 2 of the Settlement Agreement.  It states, in

pertinent part:

> Section 2.   **Additional Consideration from Borrowers**
>
> 2.01   On or before April 30, 2013, N. Broad shall repay
> to Coba, Inc. the outstanding principal amount of $2,307,000.00
> (the "Settlement Payment") plus: (1) a $0 extension fee (the
> "Extension Fee") if the conditions precedent have been met by
> March 1, 2013; (2) all reasonable costs incurred by Coba, Inc. to
> obtain an updated appraisal and Phase I environmental report

---

[8] Plaintiffs fail to even mention the Rittenhouse Property in their complaint.  This omission is disappointing given Plaintiffs' counsel's recognition at oral argument that the Settlement Agreement was intended to "obviously, [protect] the home first."  (Hr'g Tr. 62.)

concerning the N. Broad Property (collectively, the "Costs"); and (3) the scheduled payment outlined in Section 2.02 below.  If received on or before April 30, 2013, Coba, Inc. shall accept the Settlement Payment, the Costs and the Extension Fee in full satisfaction of all mortgages and liens that TD and Coba, Inc. have on the N. Broad Property.  N. Broad agrees that such amounts are due and owing to Coba, Inc. without any offset, claim, counterclaim or defense.  **If: (a) N. Broad fails to repay to Coba, Inc. $2,307,000.00 plus the Extension Fee and any outstanding Costs on or before April 30, 2013;** (b) N. Broad fails to pay any scheduled payment under this Extension Agreement on or before the date on which it is due; or (c) any other Event of Default occurs under this Extension Agreement, **Coba, Inc. shall be entitled to collect all amounts due and owing from N. Broad and enforce all mortgages and liens on the N. Broad Property, including, without limitation, all principal[9], accrued interest, taxes, fees (including legal fees) and other costs and charges authorized under the applicable loan documents**;

Eleventh Extension Sec. 2 (emphasis added).

The language used in Section 2.01 again demonstrates that Coba agreed to accept a temporarily reduced amount in satisfaction of the N. Broad Street Loan.  The plain meaning of the first two sentences of Section 2.01 indicate that the Plaintiffs could pay $2,307,000.00 plus costs "in full satisfaction of all mortgages and liens that TD and Coba, Inc. have on the N. Broad Property" **on or before April 30, 2013**.  The final sentence recognizes Coba's right to the entirety of the debt if the Plaintiffs failed to pay the reduced amount by April 30, 2013.  Section 2.01 thus plainly and unambiguously defines the identified sum as a temporary reduction of Plaintiffs' debt that was extinguished upon their failure to tender that amount by the specified date.

---

[9] The phrase "all principal" was added to this paragraph in the Second Extension Agreement.  (Compl. Ex. 9.) Ostensibly it was designed to further clarify the fact that TD Bank and Coba agreed only to a temporary reduction of the amount due under the N. Broad Street Loan.

Plaintiffs focus on the term "outstanding principal amount" that precedes the $2,370,000[10] in support of their contention that the agreement reflects a permanent reduction in the amount due under the N. Broad Street Loan. The Court cannot, however, read this term in isolation. When read in the context of the entire paragraph, the "outstanding principal amount" defines the amount TD Bank and Coba were willing to accept as a "Settlement Payment" in full satisfaction of the N. Broad Street Loan on or before April 30, 2013. After that date Coba could collect "all amounts due and owing" and "enforce all mortgages and liens on the N. Broad Property, including, without limitation, **all principal**, accrued interest, taxes, fees (including legal fees) and other costs and charges authorized under the applicable loan documents." The permanent reduction Plaintiffs describe renders the final sentence of Section 2.01 meaningless. Such an interpretation is impermissible under Pennsylvania law. *See, e.g.*, *Girard Trust Bank v. Life Ins. Co. of N. Am.*, 364 A.2d 495, 498 (Pa. Super. Ct. 1976) ("It is true that contract terms will not be construed in such a manner so as to render them meaningless.").

Moreover, when considered in light of the parties' entire agreement there is no basis to conclude that Plaintiffs were granted a permanent reduction of their debt. The clear intent of the parties, as reflected by the plain language of the Settlement Agreement described above, was: (1) to satisfy the mortgage on the Rittenhouse Property, to cancel the sheriff's sale of that property, and to postpone the sheriff's sale of the Property in exchange for the "Deed-in-Lieu" to the Easton Road Property and (2) to provide Plaintiffs with the opportunity to avoid a sheriff's sale of the Property by paying a temporarily reduced amount by a date certain. Plaintiffs deeded the Easton Road Property to TD Bank and Coba. TD Bank and Coba then cancelled the sheriff's

---

[10] Plaintiffs actually make this argument with regard to the $2,210,000 amount defined in the Settlement Agreement. However, Plaintiffs expressly agreed that the Eleventh Extension "supersedes all prior negotiations and understandings with respect to the [postponement of the sheriff's sale]." (Eleventh Extension Sec. 6.03.) Thus, Section 2.01 of the Eleventh Extension, and not Section 2.01 of the Settlement Agreement, controls.

sale of the Rittenhouse Property and postponed the sale of the Property.  The Eleventh Extension provided Plaintiffs with a further opportunity to avoid a sheriff's sale of the Property by paying a temporarily reduced amount by a date certain.  The Plaintiffs' alternative reading mischaracterizes the clear intent of the parties.  The language of the written agreement, not Plaintiffs' mischaracterization, controls.  *See ALA Inc.*, 29 F.3d at 859 n.8.  Plaintiffs' breach of contract claim is untenable and is, therefore, dismissed.  Their requests for relief in subparagraphs (b) and (e)[11] of Count I and in subparagraph (b)[12] of Count II are likewise dismissed.[13]

### Breach of Contract Against ECP Defendants

Plaintiffs allege that ECP East anticipatorily breached its promise to satisfy the Judgment under the ECP Settlement by "claim[ing] that it does not and never has had the right to satisfy the 2009 Judgment."  (Compl. ¶¶ 134, 140.)  The ECP Defendants move to dismiss this claim, contending that Plaintiffs failed to allege a statement amounting to an anticipatory breach.

"To constitute anticipatory breach under Pennsylvania law there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so."  *2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila.*, 489 A.2d 733, 736 (Pa. 1985).  Plaintiffs have not identified an absolute and unequivocal refusal to perform uttered by ECP East.  Instead, they base their claim on ECP East's brief in support of its motion for leave to

---

[11] Plaintiffs ask the Court to declare that "[t]he Settlement Agreement reduced the principal balance of the 2009 Judgment to $2,210,000" and "Plaintiffs' entire current liability under the 2009 Judgment is the North Broad Street's principal balance of $2,210,000, plus any legally collectible judgment interest from the date of judgment in this case forward."  (Compl. ¶ 99(b), (e).)

[12] They ask the Court to enter an order "[p]ermitting Plaintiffs to satisfy entirely all amounts due under each and all of these documents by payment of the principal balance of $2,210,000 prior to the expiration of the one-year period."  (*Id.* ¶ 104(b).)

[13] TD Bank and Coba also contend that Plaintiffs released all claims against them arising before February 26, 2013 vis-à-vis the release provision in the Eleventh Extension.  (TD/Coba Mot. Dismiss 17; Hr'g Tr. 20, 22.).  Because the Court grants the requested relief, it does not reach the merits of this argument.

withdraw the partial satisfaction of the judgment.  Plaintiffs allege that "ECP East now claims that it does not and never has had the right to satisfy the 2009 Judgment."  (Compl. ¶ 134.) Contrary to this allegation, that motion, attached to the complaint as Exhibit 21, states only that "ECP [East] filed the Praecipe to Satisfy Judgment in error, not realizing that ECP's predecessors still claim an interest in the Judgment."  (Compl. Ex. 21 p. 3; *see also* Compl. ¶ 87.) A statement of error is not equivalent to a distinct and positive statement of an inability to perform.  Thus Plaintiffs have not alleged that ECP East or ECP Ridge anticipatorily breached the ECP Settlement.  This claim, embodied in Count X, is accordingly dismissed.

*Tort Claims*

*Gist of the Action Doctrine*

Plaintiffs allege that TD Bank and Coba obtained the deed to the Easton Road Property under false pretenses and wrongfully converted the value for their own benefit; that TD Bank and Coba misrepresented the value of the N. Broad Street Loan and the Judgment to ECP East and ECP East's reliance on that misrepresentation in negotiations with Plaintiffs amounts to fraud attributable to TD Bank and Coba; and TD Bank and Coba intentionally interfered with Plaintiffs' existing contractual relationship with ECP East and their prospective economic opportunities with ECP East by misrepresenting the amount due under the N. Broad Street Loan. Plaintiffs claim that ECP East fraudulently induced Plaintiffs to enter into the ECP Settlement by promising to satisfy the entire Judgment.  The defendants move to dismiss these tort claims because they are barred by the gist of the action doctrine.[14]

---

[14] TD Bank and Coba move to dismiss Plaintiffs' conversion claim under this doctrine and the ECP Defendants likewise move to dismiss the fraudulent inducement claim.  Because the claims for third party fraud and tortious interference are also premised on Plaintiffs' flawed characterization of the Settlement Agreement, the Court also considers whether the gist of the action doctrine bars these tort claims.  *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990) (Marhsall, J., dissenting) ("The courts' general refusal to consider arguments not raised by the parties, for example, is founded on the need to ensure that each party has fair notice of the arguments to which he must respond."); *cf. Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) ("The district court may on

The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  "[T]he mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.2d 48, 69 (Pa. 2014).  The "critical determinative factor" when determining whether the gist of an action sounds in tort or contract is "the nature of the duty alleged to have been breached, as established" by the allegations of the complaint.  *Bruno*, 106 A.2d at 68.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract— then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (citations omitted).  Whether the doctrine applies is a question of law.  *See The Knit With v. Knitting Fever, Inc.*, No. 08-cv-4775, 2009 WL 3427054, at *4 (E.D. Pa. Oct. 20, 2009) (citations omitted).

The gist of the action doctrine bars tort claims where "the success of [the claim] is wholly dependent on the terms of the contract."  *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (citing *eToll*, 811 A.2d at 20.)  Plaintiffs premise their tort claims against TD Bank and Coba on their mischaracterization of the Settlement Agreement as extended.  Specifically, they state that "[t]he Settlement Agreement makes the delivery of a deed to the Easton Road Property a condition precedent to the settlement" and "in exchange, the

---

its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action.").

Settlement Agreement states clearly that the 'outstanding principal amount' of the North Broad Street Loan is '$2,210,000.'"  (Compl. ¶¶ 54-55.)  This contention is the basis for their claims for conversion, third party fraud, and tortious interference.  (Compl. ¶¶ 112-13, 120-23, 126, 129.) Plaintiffs identify no obligations or duties arising outside of their agreement with TD Bank and Coba in support of their tort claims.  *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)) ("[A] claim should be limited to a contract claim where 'the parties' obligations are defined by the terms of the contracts, and not by larger social policies embodied by the law of torts.'") (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 830 (Pa. Super. Ct. 1992)). Accordingly, the claims are contractual and are barred by the gist of the action doctrine.  *See Reginella Const. Co. v. Travelers Cas. & Sur. Co. of Am.*, 568 F. App'x 174, 177-78 (3d Cir. 2014) (affirming dismissal pursuant to a motion to dismiss of tortious interference claims that were "wholly dependent on the terms of the contract between the parties.") (internal quotation marks omitted); *InSyte Med. Tech., Inc. v. Lighthouse Imaging, LLC*, No. 13-cv-1375, 2014 WL 958886, at *9 (E.D. Pa. March 9, 2014) (dismissing fraud claims because they "solely related to the matters incorporated in the parties' [agreement]."); *Brown & Brown v. Cola*, 745 F. Supp. 2d 588, 623-24 (E.D. Pa. 2010) (granting motion to dismiss conversion claim to the extent the claim was "inextricably intertwined" with the language of the contract).  Counts IV, VI, VII, and VIII are dismissed.

"Where the pre-contractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the contract, courts have repeatedly dismissed such claims as sounding in contract, and, thus, barred by the gist of the action doctrine."  *The Knit With*, 2009 WL 3427054, at *10.  Plaintiffs' fraudulent inducement claim against the ECP Defendants alleges that ECP East misrepresented its ability satisfy the

Judgment.  (Compl. ¶¶ 134-35.)  This obligation is clearly pronounced in the ECP Settlement.[15]

(ECP Settlement Sec. 7.01.)  Thus the alleged "duty breached is one created by the parties by the

terms of their contract."  *Bruno*, 106 A.2d at 68. This claim is nothing more than an attempt to

re-cast and re-allege an ordinary breach of contract claim as a tort claim.  *Insyte Med. Techs.*,

2014 WL 95886, at *8 ("A breach of contract claim . . . cannot be bootstrapped into a fraud

claim merely by adding the words fraudulently induced or alleging the contracting parties never

intended to perform.") (citation and internal quotation marks omitted).  As such, the claim is

barred by the gist of the action doctrine and is dismissed.  *See Plexicoat Am., LLC v. PPG*

*Architectural Finishes, Inc.*, 9 F. Supp. 3d 484, 489 (E.D. Pa. 2014) (dismissing fraudulent

inducement claims where the fraudulent representations were "clearly enshrined in the

Agreement").  Likewise, Plaintiffs' request in sub-paragraph (f) of Count I for a declaration that

the ECP Settlement "was obtained by fraud and is null and void" is dismissed.

     *Fraudulent Inducement Against TD Bank and Coba*

     The fraudulent inducement claim alleged against TD Bank and Coba is not premised on

misrepresentations enshrined in the Settlement Agreement as extended.  Thus, the gist of the

action doctrine is not a bar to this claim.  *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d

710, 719 (Pa. Super. Ct. 2005) ("[T]he gist-of-the-action doctrine would not necessarily bar a

fraud claim stemming from the fraudulent inducement to enter into a contract . . . . if the fraud

did not concern the performance of contractual duties, then the gist of the action would be the

---

[15] Plaintiffs contend that ECP East agreed to satisfy the Judgment in its entirety.  ECP East counters that the plain
language of their agreement shows that ECP East agreed to satisfy the Judgment only as to the Plaintiffs.  For
purposes of the application of the gist of the action doctrine, the extent of ECP East's obligation is immaterial.  The
embodiment of the obligation in the contract, whatever it may be, bars a fraudulent inducement claim premised on
the same obligation.  *See, e.g.*, *Tier1 Innovation, LLC v. Expert Tech. Grp., LP*, No. 06-cv-04622, 2007 WL
1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing defendant's counterclaim for fraudulent inducement because it
was "inextricably intertwined" with plaintiff's "alleged failure to perform under the contract, as the claims pertain to
[plaintiff's] representations regarding its expertise and ability to perform its duties under the agreement between the
parties.").

fraud, rather than any contractual relationship between the parties.").  TD Bank and Coba, however, contend that any allegedly fraudulent statements supporting Plaintiffs' claim are inadmissible under Pennsylvania's parole evidence rule, and thus Plaintiffs cannot state a claim for fraudulent inducement.

Under Pennsylvania law, the elements for fraudulent inducement are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with the knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was caused by the reliance.  *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256-57 (3d Cir. 2013).  Plaintiffs allege that TD Bank and Coba represented to them during the execution of the Settlement Agreement that TD Bank would permanently reduce the amount due under the N. Broad Street Loan and the Judgment in exchange for the "Deed-in-Lieu" to the Easton Road Property.  (Compl. ¶ 106.)  This alleged representation is contrary to the express language of the Settlement Agreement.

The Pennsylvania parol evidence rule bars the consideration of prior representations concerning matters covered in a fully integrated contract, even one alleged to have been fraudulently induced.  *Dayhoff Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287 (3d Cir. 1996); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 n.26 (Pa. 2004) ("[P]arol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract.") (citation omitted).  The parol evidence rule only applies to integrated written contracts.  *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007).  An integration clause is

indicative of the parties' intent that the contract represents their entire agreement.  *Id.*; *Yocca*, 854 A.2d at 436.

"District courts in the Third Circuit disagree over the extent of the *Dayhoff* holding. Some have applied the parol evidence rule to bar prior representations when the agreement is fully integrated.  Other courts have imposed the additional requirement that the representations sought to be introduced concern matters covered in the contract."  *Smith v. Allstate Corp.*, Nos. 12-cv-0144 & 12-cv-0145, 2012 WL 2849258, at *5 (E.D. Pa. July 11, 2012) (comparing cases). Plaintiffs are barred from introducing parol evidence under either standard because the Settlement Agreement and the Eleventh Extension contain identical integration clauses[16] and the misrepresentations Plaintiffs allege concern matters squarely addressed by the Settlement Agreement as extended.

As discussed above, the language of the Settlement Agreement as extended provides Plaintiffs with a temporary opportunity to repay their debt at a reduced amount.  (Eleventh Extension Sec. 2.01.)  Plaintiffs allege that "TD Bank represented to Plaintiffs during the execution of the Settlement Agreement that TD Bank would reduce the amount due under the North Broad Street Loan and the 2009 Judgment in exchange for the deed to the Easton Road Property."  (Compl. ¶ 106.)  Because the written documents contain terms expressly contrary to the representation Plaintiffs rely upon and the agreement "supersede[] all prior negotiations and understandings with respect to the subject matter," the parol evidence rule bars the admission of TD Bank and Coba's alleged statements.  Without these statements, Plaintiffs cannot state a

---

[16]  The Eleventh Extension states: "This Extension Agreement and the documents referenced herein shall constitute the entire agreement between TD, Coba, Inc. and the Borrowers relating to the matters set forth herein, and there have been and are no other agreements, understandings or representations of any kind whatsoever.  This Extension Agreement supersedes all prior negotiations and understandings with respect to the subject matter hereof, and this Extension Agreement may be amended or modified only by a written agreement signed by all parties to this Extension Agreement."  (Eleventh Extension Sec. 6.03.)  Hence, if whether the contract is fully integrated is determinative of the application of the parol evidence rule, the inquiry would end here and the alleged inducing statements would be inadmissible.

claim for fraudulent inducement.  *See 1120 Indus. Blvd., Inc. v. Apria Healthcare, Inc.*, Nos. 14-cv-2653 & 14-cv-2953, 2014 WL 5527822, at *5 (E.D. Pa. Oct. 31, 2014) ("A claim for fraud in the inducement must be premised on oral representations on which the other party relied in entering into the agreement but which are contrary to the express terms of the agreement.") (citation omitted).  Therefore, Count III is dismissed.  *See Smith*, 2012 WL 2849258, at *5 (dismissing fraudulent inducement claim pursuant to defendant's motion to dismiss).  Likewise, Plaintiffs request in sub-paragraph (f) of Count I for a declaration that the Settlement Agreement as extended "was obtained by fraud and is null and void" is dismissed.

*Abuse of Civil Process Claim Against All Defendants*

"The gist of the action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it."  *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (citing *Mayer v. Walter*, 64 Pa. 283 (1870)).  The touchstone of the claim is a "perversion" of a legal process, which "occurs when a party uses the process 'primarily to accomplish a purpose for which the process was not designed.'"  *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (quoting *Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila.*, 154 A.2d 585, 587 (Pa. 1959)).  Thus "[t]o establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff."  *Shiner v Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998).  However, "[t]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive or spite or an ulterior purpose of benefit to the defendant."  *Gen. Refractories Co.*, 337 F.3d at 305 n.2 (quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)).

The complaint alleges only that the defendants pursued a process to its intended conclusion.  Specifically, Plaintiffs state that ECP East filed a praecipe to withdraw the partial satisfaction and TD Bank filed a brief in support.  (Compl. ¶¶ 87-92.)  The absence of facts alleging that the defendants perverted a legal process defeats the claim, regardless of an alleged motive.  Count XI is dismissed.

## Leave to Amend

"The courts should freely give leave to amend when justice so requires."  Fed. R. Civ. P. 15.  "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Gunn v. First Am. Fin. Corp.*, 549 F. App'x 79, 81 (3d Cir. 2013) (citing *Alston*, 363 F.3d at 236).  "An amendment is futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998), *rev'd on other grounds*, 525 U.S. 459 (1999).  In making this determination, the district court applies the same standard of legal sufficiency as under Federal Rule of Civil Procedure 12(b)(6).  *Id.*

Plaintiffs seek leave to amend their abuse of process claim to allege that *"both* Coba *and* ECP Ridge have in fact begun execution proceedings under the 2009 Judgment."[17]  (Pls' Opp'n ECP Mot. Dismiss 14.)  A claim for abuse of process, however, exists only where "conduct has been truly abusive."  *In Re Finney*, 184 F. App'x 285, 289 (3d Cir. 2006).  The facts Plaintiffs

---

[17] ECP Ridge's motions for appointment of a receiver and to compel discovery filed before Judge Joyner have been denied.  (*See T.D. BankNorth, N.A. v. Brkich*, No. 07-cv-01353, Pls' Mots., Doc. Nos. 42, 46.)  Judge Joyner directed the parties to raise all subsequent issues pertaining to ECP's rights to enforce the Judgment in this action. (Order, Doc. No. 47.)  On April 22, 2015, ECP Ridge refiled its motion for the appointment of a receiver.  (Doc. No. 49.)

propose to add to their complaint offer negligible support for the necessary inference that the defendants have "perversely, coercively, or improperly used that process." *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992).  However, the Court is hesitant to conclude, at this early stage, that amendment is futile.  Thus, the Plaintiffs are granted leave to amend to the extent they can allege *facts* showing the defendants used a legal process "in a way that constituted a perversion of that process and caused harm" to Plaintiffs.  *See Gen. Refractories Co.*, 337 F.3d at 304.

Because this is the first time the Court has advised Plaintiffs of the deficiencies of the factual allegations underlying their anticipatory breach of contract claim, the Court is again hesitant to conclude that amendment would be futile.  The Court, therefore, will give Plaintiffs an opportunity to cure those deficiencies to the extent they can allege *facts* showing "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so" uttered by ECP East or ECP Ridge.

Because Plaintiffs cannot alter the language of the Settlement Agreement as extended, amending the claims premised on their interpretation of that language would be futile.  Accordingly, Counts IV-VIII are dismissed with prejudice.  Similarly, amendment cannot rectify the fact that Plaintiffs' fraudulent inducement claims are barred as a matter of law.  Counts III and IX are dismissed with prejudice.

Finally, Plaintiffs' claims for declaratory and injunctive relief embodied in Counts I and II are not independent causes of action.  *See Mulqueen v. Energy Force, LLC*, No. 13-cv-1138, 2013 WL 6051020, at *11 (M.D. Pa. Nov. 14, 2013) ("Claims for injunctive and declaratory relief are remedies and not independent causes of action.")  These counts are accordingly dismissed.  As discussed above, the requests for relief in subparagraphs (b), (e), and (f) of Count

I and subparagraph (b) of Count II are barred as a matter of law.  These requests are dismissed with prejudice.

Despite Judge Quiñones Alejandro's denial of Plaintiffs' request for a preliminary injunction, Plaintiffs ask this Court to enjoin the defendants from enforcing the loan documents during the pendency of this litigation.  They also ask this Court to enjoin all defendants from making any attempt to enforce any rights under any of the loan documents for an additional year after the disposition of their claims.  (Compl. ¶ 104(a)).  Plaintiffs have alleged no facts, pointed to no right in any agreement with the defendants or cited any law in support of their request for an additional year to pay off their debt to the defendants.  Accordingly, subparagraph (a) of Count II is dismissed with prejudice.

Plaintiffs may, however, replead the requests for relief embodied in subparagraphs (a), (c), and (d) of Count I as remedies to the extent they do not conflict with this Memorandum Opinion.

An appropriate order follows.

_____
GERALD J. PAPPERT, J.